UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOMARY PENA,

             Plaintiff,

     v.                                 22-CV-427-LJV
                                        DECISION & ORDER

CHANNER LLC,

             Defendant.

_____

On June 3, 2022, the plaintiff, Jomary Pena, commenced this action under the Fair Debt Collection Practices Act ("FDCPA").  Docket Item 1.  She alleges that the defendant, Channer LLC, violated the FDCPA by, among other things, leaving two voicemails that falsely threatened litigation over Pena's personal debts.  *See id.*

Pena served Channer through the New York State Secretary of State, *see* Docket Item 3, but Channer failed to appear or respond to the complaint.  The Clerk of the Court therefore entered a default on July 19, 2022, Docket Item 5, and Pena then moved for a default judgment, Docket Item 7.  She seeks $1,000 in statutory damages, $3,000 in actual damages, and $1,660.50 in attorney's fees and costs.  *See id.*

For the reasons that follow, Pena's motion for a default judgment is granted, and her request for statutory damages is granted in part.  This Court will refer Pena's request for actual damages, attorney's fees, and costs to a United States Magistrate Judge.

## FACTUAL BACKGROUND[1]

Pena resides in Arizona.  Docket Item 1 at ¶ 3.  "At some point in the past, [Pena] incurred a bill for personal or familial medical treatment at Tempe St. Luke['s] Hospital." *Id.* at ¶ 8.  And "[a]t some point thereafter, the debt was placed with [Channer] for collection."  *Id.* at ¶ 9.

Sometime in July 2021, Channer called Pena to collect on the debt and left the following voicemail "using a pre-recorded voice":

> Jomary Pena has begun the civil appearance process due to allegations regarding fraud, malicious intent to defraud a financial institution, bounced check transactions over state lines, theft of goods and services.  These allegations now require the immediate court appearance against Jomary Pena.  Judicial recovery and its necessary court appearance are avoided by Jomary Pena contacting the firm that has been assigned to this legal file.  The firm can be contacted at 866 312 5264.  This urgent message is solely intended for Jomary Pena.

*Id.* at ¶ 10 (verbatim).  After receiving that call, Pena "agreed to settle the debt for a total of $388.86, to be paid in two installments of $194.43."  *Id.* at ¶ 11.  According to Pena, she "would not have agreed to pay [Channer] anything but for its explicit threat of civil litigation and its implied threat of criminal prosecution."  *Id.* at ¶ 15.

Channer then "attempted to institute the charges" for those two installment payments, but "one or both of the charges was declined or otherwise not completed." *Id.* at ¶¶ 12-13.  So about a month after the first call, another Channer employee called Pena and left the following voicemail:

---

[1] The following facts are taken from the complaint, Docket Item 1.  On a motion for a default judgment, "the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

> This message is intended for Jomary Pena.  This is Carl Elliot giving you a call from TCS & Associates regarding a matter that requires your immediate attention.  Due to a declined payment, we have no choice but to suspend the release order that stops all processing in regards to this matter and all further proceedings.  Phone number that either yourself or your attorney can reach to resolve this matter.  It is (833) 453-1029.  Thank you.

*Id.* at ¶ 14 (verbatim).  Pena says that the Channer employee falsely identified himself as an employee of "TCS & Associates" on that call "in order to trade on the reputation of the legitimate Arizona debt collection company Thunderbird Collection Specialists, Inc." *Id.* at ¶ 18.

## **LEGAL PRINCIPLES**

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).  "Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  "[A] defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." *Id.* at 137 (citing *Vt. Teddy Bear*, 373 F.3d at 246).  But "it is also true that a district court 'need not agree that the alleged facts constitute a valid cause of action,'" and the Second Circuit has "suggested that, prior to entering default judgment, a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.'"  *Id.* (alterations omitted) (first quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); then quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

**DISCUSSION**

I.   **NOTICE**

As an initial matter, this Court addresses whether Channer has been adequately notified of the proceedings here.  Pena served the summons and complaint on Channer through the New York State Secretary of State, and she mailed her motion for a default judgment to Channer's address on file with the Secretary of State.  Docket Item 3; Docket Item 7 at 10.  This Court therefore mailed its orders in this case to Channer at that same address.  *See* Docket Items 5, 8, 10, 12.

After some of those mailings were returned as undeliverable, *see* Docket Items 6 and 9, this Court ordered Pena to show cause why Channer had received adequate notice.  *See* Docket Item 10; *see generally Mickalis Pawn Shop*, 645 F.3d at 132 ("A default judgment may be considered void if the judgment has been entered in a manner inconsistent with due process of law.").  In response, Pena said that she had provided the Court with Channer's current mailing address that was on file with the New York State Secretary of State.  Docket Item 11.  She also said that she would mail a copy of her motion for a default judgment to another address listed on Channer's website and email the motion to an email address listed on Channer's website.  *See id.*

Federal Rule of Civil Procedure 4 provides that a limited liability company like Channer may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1), (h)(1)(A).  And under New York State law, a limited liability company may be served through the New York State Secretary of State.  *See* N.Y. Ltd. Liab. Co. Law § 303(a).  Service is complete when the summons

4

and complaint are personally served on the Secretary of State; the Secretary of State then mails the summons and complaint to the address on record.  *See id.*  Limited liability companies have a continuing obligation to maintain a current address on record.  *See id.* § 301(e).

Channer was properly served through the New York State Secretary of State.  *See* Docket Item 3.  And as mentioned above, Pena sent copies of her motion for a default judgment to the address on file with the Secretary of State, as well as to another mailing address and an email address that were listed on Channer's website.  Docket Item 11.  In light of that, Channer has been given adequate notice of the proceedings here.[2]  *See, e.g.*, *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 255 (2d Cir. 1995) (finding that service through the Secretary of State was "reasonably calculated to notify [the defendant] of the institution of suit" despite outdated address (citation and internal quotation marks omitted)); *see generally FedEx TechConnect, Inc. v. OTI, Inc.*,

---

[2] Apparently, after Pena moved for a default judgment, Channer surrendered its authority to conduct business in New York State.  *See* Search Our Corporation and Business Entity Database, N.Y. Sec'y of State, https://apps.dos.ny.gov/publicInquiry/ (reflecting inactive entity status for foreign limited liability company Channer LLC as of July 21, 2023).  But it appears that another entity with that exact same name—"Channer LLC"—registered as a domestic limited liability company in New York State on the very same day that the defendant in this case surrendered its authority.  *See id.* (reflecting date of initial filing for Channer LLC of July 21, 2023).

Both the now-defunct Channer LLC and the newly formed Channer LLC share the same address for service of process: 523 Main Street, 3rd Floor, Buffalo, New York 14203.  *See id.*  After this Court ordered her to show cause why a default judgment should be entered, Pena mailed her motion for a default judgment to the address listed on Channer's website:  523 Main Street, Suite 103, Buffalo, New York 14203.  Docket Item 11.  She also sent the motion to an email address listed on Channer's website.  *See id.*  And this Court mailed, to the address Pena provided, an order directing Channer to show cause why a default judgment should not be entered.  Docket Item 12.  That mailing has not been returned as undeliverable.

2013 WL 5405699, at *6 (S.D.N.Y. Sept. 23, 2013) (denying motion to vacate default judgment and reasoning that because "[the d]efendant [is] incorporated in New York and avail[ed] itself of the benefits that flow from the [s]tate's laws governing the corporate form[,] it must also take its obligation[]" to update its address "seriously").

## II.    DEFAULT JUDGMENT

### A.    Liability

Because Channer is in default, this Court addresses whether Pena has established Channer's liability under the FDCPA.  *See Mickalis Pawn Shop*, 645 F.3d at 137.  Pena says that Channer violated the FDCPA by: (1) "placing a telephone call to [Pena] without a meaningful disclosure of [its] identity"; (2) "falsely representing that someone had already instituted civil litigation against [Pena]" and "falsely threatening to proceed with such litigation"; (3) "falsely representing that [Pena's] failure to repay the [d]ebt represented[] . . . the crime of 'theft of goods and services'"; (4) "failing to disclose in any call that the call was from a debt collector; that [Channer] was attempting to collect a debt; or that any information obtained would be used for that purpose"; (5) "using a name other than its true name in its communications with [Pena]"; (6) "false[ly] represent[ing] that [Pena] was required to appear in court to face allegations including 'malicious intent to defraud a financial institution' and 'theft of goods and services'"; and (7) "failing to send any written notice to [Pena] within five days of the initial communication containing the information specified in [15 U.S.C.] § 1692g(a)(3)-(5)." Docket Item 1 at ¶ 45.

"To establish a violation under the [FDCPA], (1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a

consumer debt, [] (2) the defendant collecting the debt [must be] considered a 'debt collector,' and (3) the defendant [must have] engaged in any act or omission in violation of [the] FDCPA['s] requirements." *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 579 (S.D.N.Y. 2015) (citation omitted). As relevant here, the FDCPA prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). The FDCPA also bars a debt collector from "us[ing] any business, company, or organization name other than the true name of the debt collector's business, company, or organization." *Id.* § 1692e(14). Finally, the FDCPA provides that, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall[] . . . send the consumer a written notice containing" certain information.[3] *Id.* § 1692g(a).

      The complaint alleges that Pena is a consumer, that Channer is a debt collector, and that Channer violated the FDCPA in various ways. *See* Docket Item 1 at ¶¶ 3-6, 45. For example, Pena says that Channer used a false name to collect the debt. *Id.* at ¶ 14. She also says that Channer threatened her with legal action even though it "never intended to institute[] any civil litigation against [her]." *Id.* at ¶¶ 10, 14, 16. And she says that Channer never sent her the information required by 15 U.S.C. § 1692g(a). *See id.* at ¶ 19. That is sufficient to allege that Channer is liable for violating the FDCPA and to establish that Pena is entitled to a default judgment.[4]

---

      [3] The debt collector must provide that information if it is not "contained in the initial communication." 15 U.S.C. § 1692g(a).

      [4] When deciding whether to enter a default judgment, courts in this Circuit also have looked to "the same factors which apply to a motion to set aside entry of default." *See, e.g.*, *Strike 3 Holdings, LLC v. JB*, 2021 WL 2200509, at *1 (W.D.N.Y. June 1, 2021). Those factors are: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of

**B.     Damages**

Because Pena has sufficiently established that Channer violated the FDCPA, the Court turns to Pena's requests for statutory and actual damages. "While a party's default is deemed to constitute a concession of all well[-]pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A court "has an independent obligation to assess requests for damages, which usually must be established by the plaintiff in an evidentiary hearing." *Magi v. United Merch. Asset Recovery of WNY, LLC*, 2021 WL 2269478, at *2 (W.D.N.Y. June 2, 2021) (citation and internal quotation marks omitted). But a court need not hold a hearing where damages can be established by "affidavits and documentary evidence" or where damages are "liquidated or susceptible of mathematical computation." *Id.* (citation and internal quotation marks omitted).

---

prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id.* (citation and internal quotation marks omitted). Here, Channer was served with the complaint, *see* Docket Item 3, but failed to answer it or otherwise defend this case. In light of that, those three factors are satisfied. *See, e.g.*, *Krevat v. Burgers to Go, Inc.*, 2014 WL 4638844, at *6 (E.D.N.Y. Sept. 16, 2014) ("[The defendant's] failure to appear, failure to respond to the [c]omplaint, and failure to respond to the [motion for default judgment] sufficiently demonstrate willfulness."); *id.* ("[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims."); *Flanagan v. N. Star Concrete Constr., Inc.*, 2014 WL 4954615, at *7 (E.D.N.Y. Oct. 2, 2014) ("Without the entry of a default judgment, [the plaintiff] would be unable to recover for the claims adequately set forth in the [c]omplaint."). And the fact that the New York State Secretary of State may not have had Channer's updated address does not change the fact that its default was willful. *See, e.g.*, *FedEx TechConnect*, 2013 WL 5405699, at *6 (finding default willful where "[the d]efendant has provided no compelling reason for its failure to update the Secretary of State as to its new address").

### 1. Statutory Damages

Pena seeks $1,000 in statutory damages. Docket Item 7 at 5-6. When determining the amount of statutory damages to award for a violation of the FDCPA, a court considers "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). "Awards of the $1,000 statutory maximum are typically granted [only] in cases where the defendant['s] violations are 'particularly egregious or intimidating.'" *Carbin v. N. Resol. Grp., LLC*, 2013 WL 4779231, at *2 (W.D.N.Y. Sept. 5, 2013) (quoting *Cordero v. Collection Co.*, 2012 WL 1118210, at *2 (E.D.N.Y. Apr. 3, 2012)).

The Court finds that a statutory damages award of $1,000 is not warranted by the facts of this case. *See, e.g.*, *Fajer v. Kaufman, Burns & Assocs.*, 2011 WL 334311, at *3 (W.D.N.Y. Jan. 28, 2011) (deeming $1,000 "excessive" where the defendant made numerous calls to the plaintiff's home and workplace and made empty threats of litigation). Here, Pena says that Channer left her two voicemails that falsely threatened litigation over her outstanding debt. Docket Item 1 at ¶¶ 10, 14. And she says that Channer also violated the FDCPA by, among other things, misrepresenting its identity on those calls and failing to comply with the FDCPA's provisions governing notice of debts. *See id.* at ¶ 45. Although Pena maintains that the "full $1,000 award is merited here" because Channer's "violations were numerous and egregious," Docket Item 7 at 6, the Court finds that a statutory damages award of $500 is appropriate for the two phone calls at issue. *See, e.g.*, *Slusher v. Asset Consulting Experts, LLC*, 2021 WL 868627, at *5 (W.D.N.Y. Mar. 9, 2021) (awarding $500 in statutory damages where the defendant called the plaintiff "approximately 15 times over the span of a couple months"

and "communicated with [the p]laintiff in a harassing manner, calling her a 'loser' and threatening legal action").

### 2. Actual Damages

In addition to statutory damages, an individual also may collect "any actual damage[s]" that he or she suffered as a consequence of an FDCPA violation. 15 U.S.C. § 1692k(a)(1). "Actual damages are intended to compensate a plaintiff for out[-]of[-]pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from [the] defendant's failure to comply with the FDCPA." *Slusher*, 2021 WL 868627, at *5 (citation and internal quotation marks omitted). "A plaintiff may rely on his or her own testimony to establish actual damages, but he or she must explain the circumstances of [his or her] injury in reasonable detail, and may not rely on conclusory statements unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Magi*, 2021 WL 2269478, at *3 (alterations, citation, and internal quotation marks omitted).

Pena seeks $3,000 in actual damages for Channer's violations of the FDCPA. Docket Item 7 at 6-7. She says that Channer's conduct was "inherently degrading" and that she "suffered from a loss of a sense of security" from Channer's calls. *Id.* at 7. Pena also has provided an affidavit attesting that Channer "harassed [her] over the phone at work and made threats that [it was] going to go to [her] place [of] employment," which "was embarrassing" for Pena and "made [her] lose focus at [her] job." Docket Item 7-1 at ¶ 4. Moreover, she claims that Channer "contacted [her] actual employers, which made [her] experiences in [her] work environment stress-inducing." *Id.* at ¶ 7.

10

And she says that Channer "spoke[] with [her] friends[ and] family members," as well as "people that [she] ha[d] not been in contact with in years about [her] debt, which was a[] deeply upsetting experience." *Id.* at ¶ 6. Because of all that, Pena says that she "suffer[ed] from weight loss" and was unable "to eat due to stress and anxiety." *Id.* at ¶ 3.

For some reason that puzzles this Court, however, most of those allegations are absent from the complaint. *Cf.* Docket Item 7 at 2 (claiming, without any specific citation to the complaint, that "[a]ccording to the [c]omplaint, [Channer] . . . contacted [Pena's] family members regarding her debt[] and contacted her employers regarding her debt"). In fact, the complaint says nothing at all about Channer's contacting Pena's employer, friends, family, or anyone other than Pena. Instead, Pena alleges only that Channer left her two voicemails that violated the FDCPA. *See generally* Docket Item 1. Those voicemails do not imply that Channer would visit Pena's place of employment or otherwise say anything about her job, nor do they say anything about Channer's contacting anyone other than Pena herself. *See id.*

Pena does not explain this discrepancy between her complaint and the affidavit submitted in support of her motion for a default judgment. Nor does Pena's affidavit contain any additional information about these new allegations, such as when Channer called her employer or her friends and family. In light of those discrepancies, this Court cannot conclude that Pena has explained her injuries in "reasonable detail" or shown that Channer's conduct was "inherently degrading." *See Magi*, 2021 WL 2269478, at *3.

For those reasons, the Court will not grant Pena's request for $3,000 in actual damages—at least on the current record. The Court instead will refer Pena's request to a United States Magistrate Judge for an inquest. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("If in order to enter a default judgment the amount of damages must be ascertained, the court may conduct a hearing or order a reference.").

### C.  Attorney's Fees and Costs

The FDCPA provides that a successful plaintiff is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The plaintiff's counsel in this case seeks an award of $1,258.50 in attorney's fees and $402 in costs.[5] Docket Item 7 at 8-10. This Court will refer that request, along with Pena's request for actual damages, to a United States Magistrate Judge.

### CONCLUSION

For the reasons stated above, Pena's motion for a default judgment, Docket Item 7, is GRANTED, and Pena's request for damages and attorney's fees is GRANTED in part. Pena is awarded $500 in statutory damages, and the Court will refer this case to a

---

[5] That request includes 2.70 hours of attorney work at a rate of $330.00 per hour. Docket Item 7 at 8-9; Docket Item 7-3. As the plaintiff's counsel appears to acknowledge, *see* Docket Item 7-2, that rate exceeds what other courts have previously found to be the prevailing hourly rate in comparable cases in this District. *See, e.g.*, *Cooper v. Viking Acquisitions LLC*, 2022 WL 17741843, at *3 (W.D.N.Y. Nov. 9, 2022) (awarding $300 per hour to plaintiff's counsel), *adopted*, 2022 WL 17741326 (W.D.N.Y. Dec. 16, 2022).

United States Magistrate Judge for an inquest on actual damages, attorney's fees, and costs.

SO ORDERED.

Dated:  August 14, 2023
        Buffalo, New York

                              */s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE